**In re Anonymous No. 17 D.B. 86 (No. 2)**

Disciplinary Board Docket no. 17 D.B. 86.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

MARROLETTI, *Member,* April 23, 1996—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, [    ], was admitted to practice law in the Commonwealth of Pennsylvania on June 2, 1982.

On February 7, 1986, in the United States District Court, Southern District of New York, petitioner was convicted of two counts of bank fraud in violation of 18 U.S.C. §1344 and conspiracy in violation of 18 U.S.C. §371.

On April 2, 1986, petitioner submitted to the Supreme Court of Pennsylvania a statement of resignation from the practice of law. By order of the Supreme Court of Pennsylvania dated April 14, 1986, petitioner was disbarred on consent.

In an order and opinion filed November 17, 1986, the United States Court of Appeals for the Second Circuit reversed petitioner's conviction and remanded the matter for a new trial.

On January 20, 1987, petitioner filed a petition to withdraw resignation with the prothonotary of the Supreme Court. By order dated March 6, 1987, the Supreme Court denied petitioner's petition to withdraw resignation. On March 16, 1987, petitioner filed with the prothonotary of the Supreme Court a petition for reconsideration. Oral argument was held before the Supreme Court on November 10, 1987. By order dated December 9, 1987, the Supreme Court referred the mat-

ter to the Disciplinary Board to determine whether petitioner was uninformed as to the unconditional effect of his verified statement of resignation. Pursuant to this order, a hearing was held before a three-member panel of the board on April 14, 1988. On July 14, 1988, the Disciplinary Board forwarded its report and recommendation to the Supreme Court. The board determined that petitioner was not aware of the unconditional consequence of his resignation and recommended that petitioner be reinstated to the bar of the Supreme Court of Pennsylvania, pending final resolution of the charges which formed the basis for his criminal conviction. By order dated October 14, 1988, the Supreme Court remanded the matter to the Disciplinary Board for prompt disposition of the underlying charges of misconduct, including bank fraud and conspiracy. By letter dated October 17, 1988, the secretary of the Disciplinary Board notified Office of Disciplinary Counsel to file a petition for discipline. Disciplinary Counsel and petitioner, through counsel, stipulated that "any petition for discipline resulting from the investigation of the underlying charges may be submitted by petitioner (Disciplinary Counsel) to the office of the secretary directly, without proceeding through the provisions of Rule 208(a) and (3), Pa.R.D.E." The Office of Disciplinary Counsel filed a petition for discipline on November 22, 1988.

On March 8, 1989, the matter was assigned to a Hearing Committee, and, pursuant thereto, a hearing was held on February 13, 1990. On August 23, 1990, the Hearing Committee filed its report recommending that petitioner be suspended from the practice of law for a period of five years retroactive to April 2, 1986, the date on which petitioner submitted his resignation.

On September 12, 1990, Office of Disciplinary Counsel filed a brief on exceptions to the report and recommendation of the Hearing Committee arguing that the findings of fact made by the Hearing Committee supported a recommendation of disbarment.

In the interim, on September 6, 1990, petitioner filed a petition with the Supreme Court, requesting the court to confirm his disbarment by consent pursuant to his resignation and to withdraw his petition to withdraw his resignation.

On September 11, 1990, Office of Disciplinary Counsel filed with the Supreme Court its answer to respondent's petition.

The matter was adjudicated by the Disciplinary Board at its scheduled meeting on November 2, 1990 and the board, in disagreement with the Hearing Committee, recommended that petitioner be disbarred from the practice of law in the Commonwealth of Pennsylvania effective April 14, 1986, the date on which he was disbarred on consent. The report and recommendation of the board was filed on January 18, 1991.

The Supreme Court of Pennsylvania, based on the Disciplinary Board's recommendation, by order of August 21, 1991, disbarred the petitioner, [    ], with the disbarment retroactive to April 14, 1986.

During all pertinent times since April of 1986, the petitioner has not engaged in the practice of law.

In 1992, the petitioner filed a petition for reinstatement but, upon advice of counsel, subsequently withdrew that petition prior to a hearing. On April 15, 1994, petitioner filed a petition for reinstatement and a reinstatement questionnaire.

On April 19, 1994 this matter was referred to Hearing Committee [   ] consisting of [   ], Esquire, chairperson, and Members [   ], Esquire and [   ], Esquire.

Hearing before the committee was held on October 13, 1994. On August 4, 1995, the Hearing Committee report was filed recommending that petitioner be reinstated to the practice of law. It is pertinent to note that the Office of Disciplinary Counsel joined in petitioner's prayer that his petition for reinstatement be approved and neither party filed exceptions to the Hearing Committee report.

The matter was adjudicated at the October 6, 1995 meeting of the Disciplinary Board.

## II. FINDINGS OF FACT

(1) Petitioner was born on February 16, 1955 and is, therefore, 41 years of age. He attended [   ] University, from which he received a bachelor of arts degree in 1976. He attended [   ] Law School and the [   ] Law School and a juris doctor degree was conferred upon him by [   ] Law School in 1979.

(2) Petitioner was admitted to the bar in Pennsylvania on June 2, 1982 and, both prior to admission and subsequent thereto, petitioner worked for various attorneys in New York City, although petitioner was never admitted to the bar of the State of New York and, while employed with attorneys, did not practice law but rather was engaged in the "drafting of transactional documents and performing ministerial tasks." (N.T. 51.) These activities were approved by the malpractice insurance carrier that represented the firm by which he was employed, as *not* constituting the unauthorized practice of law in New York.

(3) During the time he was employed by lawyers, petitioner operated an entertainment promotion business and also engaged in brokering commercial mortgages starting in 1984. (N.T. 52.)

(4) The petitioner currently resides in [    ] in the State of New York and has been a lifelong resident of New York.

(5) The petitioner, at the time of hearing, was married and had been so for five years. The petitioner and his wife do not have any children but are in the process of adopting a child and were recently approved for adoption. (N.T. 48, 49, exhibit R-9.)

(6) The petitioner fully admitted and accepted the responsibility for his misconduct and fully agreed that his misconduct was inappropriate and wrong. (N.T. 54.)

(7) On February 7, 1986, in the United States District Court, Southern District of New York, petitioner was convicted of two counts of bank fraud in violation of 18 U.S.C. §1344 and conspiracy in violation of 18 U.S.C. §371. On April 14, 1986, petitioner was sentenced to two consecutive terms of incarceration of one year and one day and ordered to pay restitution in the amount of $143,500. (N.T. 55, 56, 57, exhibit P-4.)

(8) Petitioner made restitution of the full amount in 1986 and served five months and 29 days before his conviction was reversed by the United States Court of Appeals for the Second Circuit and remanded for a new trial. (N.T. 57.)

(9) On or about January 9, 1987, the United States Attorney for the Southern District of New York and petitioner, through counsel, entered into an agreement whereby the government agreed to nolle prosequi all charges and petitioner, in return, agreed to waive all

rights to recover the restitution paid or to take any action against the government for his incarceration. (N.T. 60.)

(10) The petitioner had submitted a resignation from the practice of law in April of 1986 based on his criminal conviction which resulted in his disbarment by consent and he subsequently sought to withdraw the resignation once his criminal conviction was reversed. (N.T. 59, 60, 61.)

(11) The petitioner was subsequently disbarred by order of the Supreme Court of Pennsylvania on the same underlying facts by order dated August 21, 1991. This disbarment was retroactive to April 14, 1986.

(12) After being released from federal prison in late 1987, petitioner became employed by [A] in New York and has continued to be employed by that organization through the present time. (N.T. 61-62.)

(13) The petitioner indicated that [A] is a direct lender that is involved in the placement of debt instruments on commercial real estate nationwide. At the current time, petitioner is the co-administrator of the [A] and in charge of the portfolio administration.

(14) The petitioner has responsibility for administering the funds and, at one point, the fund had approximately $100,000,000 of money lent. The petitioner's current responsibility with [A] involves, among other things, administration and agency representation where he produces loans and markets them to third party institutions, etc. (N.T. 63, 64.)

(15) The petitioner testified that he had never been disciplined or cited at any time for his conduct with [A] and had an excellent record there. (N.T. 64.)

(16) The petitioner averred that he was licensed to work at [A] as a real estate broker and, further, had

passed the educational requirements and had never been disciplined as a real estate broker. (N.T. 64, 65.)

(17) In 1989, upon his written application for the practice of real estate in the State of New York, petitioner disclosed that he had been convicted of a criminal offense and this disclosure continued through 1989. (N.T. 108.)

(18) In 1991, when petitioner completed a written application for his real estate license, he stated that he had not been convicted of a crime or offense. (N.T. 109.)

(19) The reason given for this change in answer was because petitioner had been told to do so by his criminal counsel. (N.T. 109.)

(20) The petitioner has been very much involved in the community in which he lives. He has worked for the volunteer fire and local rescue squad since 1986 and has continued his involvement through the present time. The petitioner has also been involved, in the past, with the Boy Scouts of America, particularly in the 1980s and currently serves as a merit badge counselor in his area with Boy Scout Troop [ ] in [ ] County, New York. (N.T. 66.)

(21) The petitioner's activities with the Boy Scouts were done on a pro bono basis. (N.T. 67.)

(22) The petitioner is a member of the [ ] Rescue Unit and a volunteer firefighter with the [ ] Fire Department. In that capacity, the petitioner had to become and is a licensed paramedic. (N.T. 67.)

(23) The petitioner, in becoming a licensed paramedic, had to attend courses of over 600 hours in length. The petitioner is a licensed EMT and, further, fully trained in cardiac care and trauma care. (N.T. 68.)

(24) The petitioner currently is deputy chief of the [     ] Medical Unit and has responsibility for the safety of patients and members of the unit. (N.T. 70.)

(25) The petitioner has not been paid for any of these activities and does them on a voluntary and pro bono basis. (N.T. 70, 71.)

(26) The petitioner spends approximately 20 or so hours per week on these volunteer related activities. (N.T. 71.)

(27) The petitioner, while participating in rescue activities, has suffered various injuries and in August 1994 suffered an injury to his forehead requiring 127 stitches. (N.T. 71, 72.)

(28) The petitioner has received a certificate of merit from the governor's office of the State of New York for saving the life of a 6-day-old baby. (N.T. 72, 73, exhibits R-7A, R-7B.)

(29) The petitioner has been widely recognized for his volunteer medical and rescue work and has been the subject of various newspaper articles. (N.T. 74, 75, exhibit R-7C.)

(30) The petitioner has written many articles in the commercial and real estate area and has had an article published in the [     ] and a second article published in the [     ]. (N.T. 76, exhibit R-6.)

(31) The petitioner has also published articles concerning rescuing persons with ocean- and lake-type injuries and the petitioner also serves as the chief paramedic of [     ]. (N.T. 76, 77.)

(32) The petitioner's activities in boat rescue can require him to jump out of a helicopter to rescue persons when boats are overturned in the ocean or lake. The petitioner has been involved in that kind of activity

since 1991 and does that on a volunteer basis without pay. (N.T. 77, 78.)

(33) The petitioner has also spoken and lectured in the real estate financing area as well as commercial mortgage and development and has chaired the [   ] Conference several times. (N.T. 79, exhibit R-8.)

(34) The petitioner complied with the terms of the order disbarring him and filed a certificate of compliance after his disbarment in 1991. (N.T. 80, 81.)

(35) The petitioner, when he submitted the current reinstatement petition, had taken all the required courses for readmission to the Pennsylvania Bar. (N.T. 82, 83, exhibit R-4.)

(36) The petitioner, in addition to taking the required courses, has maintained currency in the areas of law in which he is interested through reading relevant articles in the area of real estate, finance and bankruptcy and general municipal law. (N.T. 84.)

(37) The petitioner has filed all his current tax returns. (N.T. 85.)

(38) The petitioner advised the panel of his outstanding debts and testified that he is current on all installment payments. (N.T. 86, 87.)

(39) The petitioner testified that if readmitted to the practice of law, he was not certain that he was going to actually practice in the Commonwealth of Pennsylvania.

(40) The petitioner indicated that he is currently undecided whether, if readmitted, he will actually practice law or continue in his present employment. (N.T. 88.)

(41) The petitioner indicated that if he was readmitted he would practice in the commercial area, particularly the transactional side of real estate and bankruptcy. (N.T. 88, 89.)

(42) The petitioner, notwithstanding reversal of his criminal conviction, accepted full responsibility for the misconduct that resulted in his disbarment and he testified that he had learned from this experience and was a changed person. (N.T. 90, 91, 92.)

(43) Dr. [B], president of an educational consulting firm and former director of a residency program for [　] Medical Center, testified that he has known the petitioner since 1972, that petitioner's reputation in the community was excellent as a law-abiding, truthful and honest person. (N.T. 30, 31.)

(44) Dr. [B] assured the committee that there has been a substantial change in petitioner since 1985 when the misconduct occurred, and further indicated that he has observed genuine remorse in petitioner since that time. (N.T. 32, 33.)

(45) By stipulation, character letters were introduced and it was stipulated that each writer would testify consistent with the letter submitted with regard to the excellent character of petitioner. (Exhibits R-20A, R-20C, R-20D, R-20E.)

(46) Petitioner is a named party in ongoing litigation in New York but neither case in which petitioner is a named party involves any issue relevant to this petition for reinstatement.

## CONCLUSIONS OF LAW

(1) Petitioner has demonstrated that the conduct responsible for his being disbarred was not so egregious as to bar immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated that he has undertaken and successfully completed a substantial period of meaningful rehabilitation.

(3) Petitioner has shown by clear and convincing evidence that he possesses the moral qualifications necessary for admission to the practice of law in Pennsylvania.

(4) Petitioner has shown by clear and convincing evidence that he possesses the competency and learning in the law necessary for admission to the practice of law in Pennsylvania.

(5) Petitioner has shown by clear and convincing evidence that his reinstatement will not be detrimental to the integrity and standing of the bar, nor harmful to the administration of justice, nor subversive of the public interest.

## IV. DISCUSSION

A disbarred attorney has the burden of demonstrating, by clear and convincing evidence, that he has both the moral qualifications and competency and learning in the law required to be eligible for reinstatement. In addition, the disbarred attorney must meet the same burden in demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, nor subversive of the public interest. See Rule 218(c)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement.

Before reaching these issues, however, consideration must be given to the threshold question of whether the magnitude and severity of the infraction which prompted disbarment would permit resumption of the practice of law without undermining the standing and integrity of the bar. In *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986), the Supreme Court made it clear that disbarment which carries with it a five-year disruption of practice does not mean that

at the end of the five years, a disbarred attorney would automatically be eligible for reinstatement. Rather, a review of the underlying offense is required as an initial step in determining eligibility for readmission. The court in *Keller* made it clear some offenses may be of such an egregious nature that no amount of time can dissipate the adverse effect reinstatement of an offending attorney might have upon the standing and integrity of the bar. Thus, the court distinguished a disbarment from a five-year suspension in that although both involve a minimum five-year prohibition from the practice of law, disbarment carries with it an air of finality which requires re-examination of the offensive conduct before any consideration may be given to petitioner's plea to regain the privilege to practice law.

On February 7, 1986, this petitioner was convicted of two counts of bank fraud and conspiracy, in the United States District Court, Southern District of New York.

On April 2, 1986, petitioner submitted a statement of resignation from the practice of law. By order of the Supreme Court of Pennsylvania dated April 14, 1986, petitioner was disbarred on consent.

At the time of disbarment, petitioner had no prior disciplinary record.

On November 17, 1986, the United States Court of Appeals for the Second Circuit reversed petitioner's conviction and remanded the matter for a new trial.

Subsequent to conviction, but prior to reversal of his conviction and remand for a new trial, petitioner served five months and 29 days in prison and made restitution in the amount of $143,500, as ordered by the United States District Court.

On or about January 9, 1987, the United States Attorney for the Southern District of New York and petitioner, through counsel, entered into an agreement whereby the government agreed to nolle prosequi all charges and petitioner agreed to waive all rights to recover the restitution paid ($143,500) or to take action against the government for his incarceration.

Immediately following entry into the above agreement, *i.e.,* on January 20, 1987, petitioner undertook to withdraw his resignation but was unsuccessful in regaining his license to practice law for reasons not pertinent herein.

As related above, the matter before this board is the petition for reinstatement filed on April 15, 1994.

It is important to note that during all pertinent times since April 1986, petitioner has not engaged in the practice of law. While a great deal of time has been devoted to setting forth the facts and history of this case, the plain and simple truth is that this petitioner has suffered the loss of his license to practice law as a result of conviction of crime that was reversed *after* petitioner had made restitution in the sum of $143,500 and had served five months and 29 days in prison.

*After* such imprisonment and payment of the aforesaid not inconsiderable sum, the United States Attorney then agreed to nolle prosequi all charges if petitioner would agree to waive all rights to recover the restitution of $143,500 and, further, to *not* take action against the government for his incarceration.

Notwithstanding the financial cost and unable to turn back the clock to erase the period of imprisonment and notwithstanding his guilt or innocence, when the United States Attorney, in common parlance, made to this petitioner "an offer he could not refuse," petitioner accepted the deal.

This petitioner now comes before us having been disbarred since April 14, 1986 for conviction of a crime for which he served almost six months in prison and made substantial restitution that has subsequently been reversed. It would serve no purpose to speculate as to what brought this set of circumstances about except to remind ourselves that, at this time, this petitioner, like any other citizen of the United States, is cloaked with the presumption of innocence of any crime until he has been proven guilty beyond a reasonable doubt. Further, in this matter it is difficult, if not impossible, to determine whether the conduct for which petitioner was disbarred was so egregious as to preclude possible reinstatement at this time. What is clear, however, is that while petitioner's misconduct was serious enough to initially cause him to be convicted of two counts of bank fraud and conspiracy, those convictions were tainted by error sufficient to require reversal and remand for a new trial. Because the United States Attorney for the Southern District of New York entered into an agreement with petitioner whereby the government agreed to nolle prosequi all charges, the petitioner comes before us having been found guilty of no crime and cloaked with the presumption of innocence as above stated.

Accordingly, although petitioner admitted to "misconduct" that was "inappropriate and wrong," this board's independent review of all the facts and circumstances leading to petitioner's prosecution and disbarment, resulted in the conclusion that petitioner's admitted misconduct is not so egregious as to preclude his reinstatement at this time.

In addition, considering petitioner's activities during a 10-year disbarment, this board also concluded that a sufficient amount of time has transpired since pe-

titioner's disbarment, during which petitioner has engaged in a qualitative period of rehabilitation. *Keller, supra.*

This board respectfully submits that the history of this petitioner's conduct and behavior since his release from prison, supports that conclusion.

His position with the [A], in which he administers funds reaching a total of $100,000,000 at some times, is impressive and along with his licensure as a real estate broker lends strong credence to petitioner's career accomplishments and satisfies this board that, professionally, any rehabilitation that may have been required of petitioner has been accomplished.

Even more impressive is the voluntary, pro bono activities wherein petitioner has become an accomplished and licensed paramedic. To become licensed, petitioner attended courses of over 600 hours in length. He earned a license as an emergency medical technician and is fully trained in cardiac and trauma care.

He has risen to become deputy chief of the [    ] Medical Unit and spends approximately 20 or so hours a week on these volunteer-related activities.

In the course of his rescue work, he has suffered injuries periodically, on one occasion requiring 127 stitches to his forehead.

He has received a certificate of merit from the governor's office of the State of New York for participating in saving the life of a 6-month-old baby to the everlasting gratitude of not only the community but, of course, the parents of the child, as set forth in exhibit R-7A.

Hearing Committee [    ] consisting of [    ], Esquire, chairperson, and Members [    ], Esquire and [    ], Esquire filed its report on August 4, 1995, unani-

mously recommending that petitioner be reinstated to the practice of law.

The Office of Disciplinary Counsel joined in petitioner's prayer that his petition for reinstatement be approved and neither party filed exceptions to the Hearing Committee report.

Notwithstanding that, we must independently determine whether the petitioner has satisfied all of the requirements of Rule 218(c)(3)(i), Pa.R.D.E.

Petitioner has shown his competency and learning in the law. Petitioner has attended and successfully completed all of the courses required for readmission to the Pennsylvania Bar and has lectured and written on commercial and real estate law. The evidence supports a finding that petitioner has the competency and learning in the law necessary for readmission to practice law in Pennsylvania.

Petitioner met the burden of moral qualifications by presenting the testimony of several eminent and professionally accomplished witnesses who extolled the excellent character of the petitioner, described the genuine remorse suffered by petitioner as well as a character change in petitioner since 1985 when the alleged misconduct occurred.

We do not deem it necessary to reproduce that testimony here, but suffice it to say that all witnesses spoke in glowing terms with great admiration for petitioner.

The testimony from respected witnesses familiar with a petitioner has been considered in past cases to meet the burden of moral qualification. *In re Anonymous No. 32 D.B. 83,* 14 D.&C.4th, 136, 145 (1991). Therefore, the board finds that petitioner has met the burden of showing moral qualification.

Finally, under Rule 218, Pa.R.D.E., petitioner must show that his reinstatement will be "neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest." The evidence before the board in the instant case satisfies this requirement as well.

Therefore, the evidence, by testimony and documents submitted, clearly and convincingly establishes petitioner's complete rehabilitation from any prior disability and his fitness for the practice of law.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that petitioner, [    ] be reinstated to the practice of law.

It is further recommended that the court direct that petitioner pay all of the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 218(e) of the Pennsylvania Rules of Disciplinary Enforcement.

Board Members Paris and George did not participate in the October 6, 1995 adjudication.

## ORDER

And now, May 30, 1996, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated April 23, 1996, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.